In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-3063

WALLEYE TRADING LLC,

*Plaintiff-Appellant,*

*v.*

ABBVIE INC. and WILLIAM CHASE,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 05114 — **Charles P. Kocoras**, *Judge.*

———————————

SUBMITTED MARCH 30, 2020 — DECIDED JUNE 22, 2020

———————————

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* AbbVie Inc. made a tender offer to repurchase as much as $7.5 billion of its outstanding shares. It conducted a Dutch auction to determine the price. In a Dutch auction one side offers a high price, which falls until the other accepts. AbbVie, acting as a buyer, began its auction at $114. Shareholders participated by offering to sell their shares at or below $114. AbbVie then selected the low-

est price that would allow it to purchase $7.5 billion of shares from the tendering shareholders.

The auction was conducted from May 1, 2018 through May 29, 2018. AbbVie hired Computershare Trust Co. to receive all offers. On May 30, at eight A.M., AbbVie announced the preliminary result: it would purchase 71.4 million shares for $105 per share (using the whole $7.5 billion pot when accounting for fees and expenses). AbbVie's stock, which had been trading at roughly $100, closed at $103 on May 30. Approximately an hour later, AbbVie announced that it had received corrected numbers from Computershare. Instead of purchasing 71.4 million shares at $105 a share, it would purchase 72.8 million shares at $103 a share, again adding to $7.5 billion. AbbVie's share price fell to $99 the next day.

Walleye Trading LLC contends that AbbVie's announcement of preliminary numbers, followed by corrected numbers after trading closed, violated sections 10(b) and 14(e) of the Securities Exchange Act of 1934, codified at 15 U.S.C. §§ 78j(b) and 78n(e). Walleye also contends that William Chase is liable under §20(a) of the Act, 15 U.S.C. §78t(a), as a controlling manager of AbbVie; this claim is contingent on AbbVie being liable on one of the theories. The district court dismissed Walleye's complaint for failing to state a claim. 2019 U.S. Dist. LEXIS 158832 (N.D. Ill. Sept. 18, 2019).

The Supreme Court has held that private parties can sue under §10(b) and its corresponding rule, 17 C.F.R. §240.10b–5, despite the lack of statutory language creating a private right of action. See *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975). Section 10(b) and Rule 10b–5 prohibit fraudulent or misleading statements of material fact in connection with the purchase or sale of a security. A plaintiff

bringing §10(b) claims must plead the fraud with particularity, see Fed. R. Civ. P. 9(b), and allegations of scienter must be as compelling as any opposing inference. That pleading standard comes from the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. §78u–4(b). See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Walleye's §10(b) claims are perplexing. It has not pleaded that AbbVie made any statement that is false or misleading, let alone made a statement with the required mental state. AbbVie's initial announcement says: "[t]he number of shares to be purchased and the purchase price are preliminary and subject to change". How can an announcement, explicitly subject to change, become misleading or false when it is indeed changed? It does not: AbbVie did not make a false or misleading statement. It accurately reported Computershare's preliminary numbers.

Walleye contends that AbbVie executives acted with the requisite mental state because they failed to perform "grammar school arithmetic" to verify Computershare's numbers. But neither the statute nor any regulation requires an issuer to verify someone else's data before reporting them. (And, given the size of this transaction, a sixth grader would not be the right person to do the math.) Walleye also argues that the length of time it took AbbVie to issue the correction supports an inference of scienter because, before issuing the correcting statement, AbbVie must have known that the initial statement was incorrect. To repeat: The initial statement was *correct* in relaying what Computershare told AbbVie. True, Computershare must have provided the revised numbers to AbbVie before it issued the updated statement. Yet it takes time to put new numbers in a release

and make them public. It takes more time if, as Walleye insists, the numbers must be checked and rechecked. Neither the statute nor any rule requires this to be done in seconds or minutes rather than hours.

Most curiously, Walleye claims that AbbVie violated §10(b) and the corresponding rule because it failed in its duty to correct the initial statement. Yet AbbVie did correct the initial statement. That correction led to this suit! Walleye has failed to plead a plausible §10(b) claim.

Section 14(e) liability is reserved for statements "in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. §78n(e). "This provision was expressly directed at the conduct of a broad range of persons, including those engaged in making or opposing tender offers or otherwise seeking to influence the decision of investors or the outcome of the tender offer." *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 24 (1977).

Broad substantive scope does not imply that any particular person has a right of action. The Securities and Exchange Commission has authority to sue, see 15 U.S.C. §78u(d), and private persons who can show that they relied on false or misleading statements in documents filed with the Commission can recover damages. 15 U.S.C. §78r(a). But Walleye does not try to show that AbbVie's statements were filed with the SEC or that Walleye relied on them.

The Supreme Court has twice been asked to recognize a broader private right of action under §14 and has twice declined. See *Piper*, 430 U.S. at 41–42, and *Virginia Bankshares,*

*Inc. v. Sandberg*, 501 U.S. 1083 (1991). Those decisions concern persons and theories different from Walleye's, but it would be hazardous to predict, given the limitations of §78r(a) and the Supreme Court's current views about implying new private rights of action, see *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–57 (2017); *Alexander v. Sandoval*, 532 U.S. 275, 287–88 (2001), that an expansion of implied private rights under §14 is likely.

Without discussing the problem, Walleye assumes that §14(e) gives it a private right of action to collect damages for press releases issued after a tender offer closes. Yet the end of the tender offer placed Walleye outside the zone of interests protected by §14. By May 30, when AbbVie announced the results of the Dutch auction, there was no longer any way for shareholders to participate in it. We conclude that an investor cannot use §14(e) to challenge a statement made after a tender offer has closed.

AFFIRMED